## Duncan v. Mercy Catholic Medical Center

C.P. of Delaware County, no. 98-52559.

*John E. Savoth,* for plaintiffs.
*Christine McCafferty,* for defendant.

BRADLEY, *J.,* March 20, 2001—Plaintiffs, Lori and Greg Duncan, appeal from the denial of their motion

for post-trial relief following a jury trial in this medical malpractice action.

This matter arises from an incident which occurred on October 23, 1996 at defendant's hospital, Mercy Catholic Medical Center. On that date, plaintiff Lori Duncan was admitted to the hospital to deliver twins. A nurse employed by the hospital attempted to start an intravenous (IV) in Mrs. Duncan's right wrist. She made two unsuccessful attempts to enter a vein, stopping when plaintiff complained of intense pain radiating up her forearm and down into her right hand. An IV was finally established by another nurse in plaintiff's left hand. Neither this series of events nor any complaints by Mrs. Duncan of pain were documented in the hospital records.

Mrs. Duncan contends that the actions of the nurse in attempting to insert the IV deviated from the standard of care for such a procedure and resulted in permanent injury to her right hand. Additionally, plaintiff was injured in September 1999 when a glass dish slipped out of her weakened right hand while she was washing it, resulting in a significant laceration of her left wrist. This incident required emergency surgery and a follow-up surgical procedure on her left hand. Plaintiff contends this subsequent injury further magnified her already disabled status.

A jury trial was held in this matter from September 18, 2000 through September 20, 2000. At trial, plaintiff testified to the severe functional limitations her injury imposed. She could not hold or carry things, and she could not hold baby bottles to feed her infant twins. (N.T. 9/18/2000, pp. 113-14.) Indeed, she testified that when she sustained the laceration to her left hand, she alerted her neighbor by kicking the neighbor's door because she couldn't grip the door handle with her right

hand. (N.T. 9/18/2000, pp. 116-17.) Two doctors offered expert testimony on her behalf. A vocational rehabilitation specialist, Dr. Jasen Walker offered his opinion that Mrs. Duncan was totally disabled as a result of her hand injury. (N.T. 9/19/2000, p. 56.)

Defendant MCMC vigorously contested liability. MCMC claimed that the sole cause of plaintiff's injuries was pre-existing carpal tunnel syndrome resulting from her job as a claims processor. MCMC also claimed that there is no objective evidence of injury or of plaintiff's complaints of continuing pain. Finally, MCMC asserted that if there was injury to the radial nerve by the nurse inserting the IV, that fact alone is not conclusive of negligence and moreover, that type of injury would not result in the symptoms plaintiff was experiencing.

The jury returned a verdict in favor of defendant. A motion for post-trial relief was filed challenging as error the court's decision allowing defendant to cross-examine Mrs. Duncan on her observations of a surveillance video. The motion was denied. This appeal followed.

The sole issue presented is whether the court committed an error of law and/or abuse of discretion in permitting defendant to cross-examine plaintiff on her observations of a surveillance video which was not shown to the jury.

In defendant's case in chief, defense counsel sought to introduce a surveillance videotape showing plaintiff engaged in various activities, such as opening a car door, carrying her child, etc. Defendant did not conduct this surveillance. Rather, the videotape was obtained by defense subpoena from Mrs. Duncan's former employer, Principal Financial Group.

The first time counsel for defendant revealed the existence of the videotape to counsel for plaintiffs was at the start of defendant's case in chief. Plaintiffs' counsel requested that he be permitted to view the videotape out of the presence of the jury to determine if an objection was warranted. The tape was shown in open court with the jury not present. After viewing the videotape, plaintiffs' counsel objected to its admission on the basis that its existence had not been disclosed during discovery. Plaintiffs pointed out no. 7 of plaintiffs' request for production of documents (first) specifically requested the following:

"(7) Any and all written and/or videotaped and/or audiotaped and/or electronic and/or the result of any other technique of surveillance memorializations of conduct and/or conversations between plaintiff or anyone acting on plaintiff's behalf and the defendant or concerning in any way this action or its subject matter, except for such written and/or videotaped and/or audiotaped and/or electronic and/or the result of any other technique of surveillance memorializations not discoverable under Pa.R.C.P. 4003.3.

"This request is deemed to be continued insofar as if any of the above is secured subsequent to the date herein for the production of same, said documents, photographs, statements, reports, etc. are to be provided to defense counsel within 30 days of receipt of same."

In response to this request, defendant responded "none." See defendant's responses to plaintiffs' first request for production of documents. Defendant never supplemented this response.

The court entertained argument on this issue. Defendant asserted that they were under no obligation to reveal either the tape's existence or their intent to use it,

because they did not make the videotape, they only received it pursuant to a subpoena which power plaintiffs could have availed themselves of, and, finally, because the fact an activities check was conducted was made known to plaintiff's own doctor, Dr. Guy Nardella. Reasoning that it was immaterial who made the videotape or how defendant obtained it, the court found defendant had a continuing obligation to disclose it pursuant to plaintiffs' aforementioned discovery request. (N.T. 9/19/2000, p. 103.) Plaintiffs' objection to the jury viewing the videotape was sustained. (N.T. 9/19/2000, p. 105.)

Immediately after the ruling, defendant called Mrs. Duncan to the stand as an adverse witness. She was questioned about the many activities she performed on the videotape. (N.T. 9/19/2000, pp. 111-15.) This was an obvious attempt to impeach her credibility on the issue of the functional limitations the alleged hand injury produced. She acknowledged that on the videotape she was performing certain activities with her hands. (N.T. 9/19/2000, pp. 111-15.) She had previously testified on direct that she was unable to perform many of these same activities. (N.T. 9/19/2000, pp. 113-14.) Plaintiffs objected to this entire line of questioning characterizing it as an "end run" around the exclusion of the videotape. Nonetheless, the court permitted defendant to cross-examine plaintiff on specific activities she performed on the videotape. It is this ruling which plaintiffs contend is an error of law or abuse of discretion which mandates a new trial.

It is very clear that under the recent case of *Dominick v. Hanson,* 753 A.2d 824 (Pa. Super. 2000), defendant was obligated to turn over the surveillance videotape in discovery. Failure to do so resulted in the sanction of

preclusion. However, the court is also aware of the competing policy concerns as set forth in *Poleri v. Salkind,* 453 Pa. Super. 159, 683 A.2d 649 (1996). The court notes that the purpose of discovery rules is to prevent surprise and unfairness and allow a fair trial on the merits. In the instant case, the reference to the videotape was found in plaintiff's own treating doctor's file, therefore, she could not claim surprise at its very existence.

To accommodate the competing concerns of compliance with discovery rules and at the same time conducting a fair trial on the merits, the videotape was not shown to the jury, but defendant was permitted to cross-examine plaintiff as to specific activities she was filmed doing. This was clearly in the nature of rebuttal testimony since defendant sought to rebut plaintiff's direct testimony of severe functional limitations stemming from the alleged malpractice. Plaintiff was not prejudiced by this cross-examination because she could not claim surprise as reference to the videotape was found in her own doctor's files and because she was aware through prior cross-examination of her experts and the report of defendant's expert, Dr. Richard Bennett, that defendant was asserting that plaintiff's complaints and subjective motor deficits were exaggerated and simply not credible. It is axiomatic that the Rules of Civil Procedure must first be construed "to secure a just determination of the action[: t]his will more likely be achieved by receiving relevant evidence than by excluding it." *Clark v. Hoerner,* 362 Pa. Super. 588, 599, 525 A.2d 377, 382 (1987).

It is for the above reasons the court denied plaintiffs' motion for a new trial on the sole issue whether it was an of error of law or abuse of discretion to allow cross-examination of the plaintiff about the activities she performed on the videotape.